IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2021 Session

## CUMBERLAND ADVISORY GROUP, LLC v. MARTHA ARNITA LEE ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 16-635-II     Anne C. Martin, Chancellor

_____

### No. M2019-02072-COA-R3-CV

_____

This appeal arises from a boundary dispute in a residential neighborhood in Nashville. After a bench trial, the court determined the boundary between the plaintiff's and the defendants' properties was depicted on a survey prepared by the plaintiff's surveyor. The dispositive issue on appeal is whether the trial court erred in determining the location of the boundary. Having concluded that the evidence preponderates in favor of the trial court's decision, we affirm. Additionally, we have determined that the plaintiff is entitled to recover the reasonable and necessary expenses and attorney's fees incurred as the result of a frivolous appeal in accordance with Tenn. Code Ann. § 27-1-122. Therefore, we remand for the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Martha Arnita Lee and Bennie Lee, Nashville, Tennessee, Pro se.

Donald Capparella and Kimberly MacDonald, Nashville, Tennessee, for the appellee, Cumberland Advisory Group, LLC.

### OPINION

In 2014, the plaintiff, Cumberland Advisory Group, LLC ("CAG"), purchased residential property located at 1061 Second Avenue South in Nashville, Tennessee ("the

CAG property"). The defendants, Martha Arnita Lee and Bennie Lee, owned the property next door, 1059 Second Avenue South ("the Lee property").[1]

When CAG purchased the property, it decided to demolish the existing structure, a house, and build a new one. CAG hired Steve Matthews, a surveyor with Dale & Associates, to conduct a survey. Mr. Matthews examined the deeds to the CAG and Lee properties and concluded that the CAG property contained 30 feet of road frontage on Second Avenue South and the Lee property contained 43 feet. Mr. Matthews further determined that the boundary between the CAG and Lee properties corresponded with a chain link fence that ran between them. After receiving the survey, CAG finalized its plans for the new structure and proceeded with demolition.

The company CAG hired to demolish the home damaged the chain link fence in the process. According to CAG, two panels of the fence and two fence posts remained, one on each end of the fence. The demolition company installed a black chain link fence along these two fence posts as a temporary fix.

The previous home on the CAG property sat nearly flush with the disputed boundary line. CAG sought to build the new structure with an eight-foot setback, which would move the structure further away from the Lee property. However, according to Glen Dukes, the sole owner of CAG, there was a maximum three-foot setback requirement. Therefore, CAG applied for a variance with the Metropolitan Nashville Board of Zoning Appeals ("BZA"). On October 12, 2015, the BZA met to discuss CAG's request. Mr. Lee attended the meeting to dispute the boundary between the two properties, contending his property contained 45 feet of road frontage, not 43 feet as found by CAG's surveyor, and argued the fence should be moved closer to CAG's planned structure. Notwithstanding Mr. Lee's objection, CAG received a variance from the BZA.

Thereafter, Mr. Dukes sent a letter to the Lees detailing what the surveyor found. In response, Mr. Lee constructed a wrought iron fence along what Mr. Lee claimed was the boundary line. The wrought iron fence blocked CAG's contractors from accessing a temporary power pole, and consequently, delayed construction.

On June 17, 2016, CAG commenced this action against the Lees with the filing of its complaint, which was amended shortly thereafter. In its amended complaint, CAG requested that the trial court declare that the boundary between the two properties was the boundary marked by the Matthews survey, giving CAG 30 feet of road frontage and the Lees 43 feet. CAG also asserted claims for trespass, conversion, and, in the alternative, adverse possession. CAG requested that the court award it up to $150,000 in damages for loss of use, order the Lees to remove the wrought iron fence, and issue an injunction

_____

[1] Mrs. Lee purchased the Lee property in 2000. In 2014, after this action had been commenced, Mrs. Lee quitclaimed the property to Mr. Lee and herself as tenants by the entirety.

preventing the Lees from placing any additional obstacles on CAG's property or interfering with its use of the disputed area.

The Lees filed an answer and countercomplaint alleging the true boundary gave them 45 feet of road frontage, and CAG was trespassing on their property. The Lees claimed they were entitled to damages as a result, the amount of which was to be determined at the trial.

As requested by CAG, the court issued a temporary injunction to prevent the Lees from interfering with the disputed area, the specifics of which were clarified in an order entered on April 8, 2019. Pursuant to the clarified injunction, which was based in part on two surveys, one performed by CAG's surveyor and the other performed by the Lees' surveyor, the court determined that the area in dispute was a 2.5-foot-wide strip between the properties. The court's order provided that the Lees were to "[i]mmediately remove any and all objects within the disputed area," which included wooden stakes, surveyor flags, and fencing, and the court ordered them to refrain from entering the disputed area.

Shortly thereafter, CAG filed a motion for contempt alleging the Lees failed to abide by the court's April 8, 2019 order. Following an evidentiary hearing, the court held the Lees in civil contempt, basing its determination on the Lees' testimony that they understood the April 8 order but chose not to comply with it. On July 26, upon CAG's motion for sanctions, the court ordered the Lees to pay CAG its attorney's fees in the amount of $1,787.50. The Lees filed a motion to alter or amend the judgment in accordance with Rule 59.04 of the Tennessee Rules of Civil Procedure, and on August 28, the trial court denied the motion.

The case was tried over two days in November 2019.[2] A number of witnesses testified at the trial on behalf of CAG. Its witnesses included its owner, Mr. Dukes; its surveyor, Mr. Matthews; the former owner of the CAG property, Jackie Cox; and the former tenant, John Stallworth. It also introduced into evidence the warranty deed for the CAG property and Mr. Matthews' survey. Mr. Matthews testified that the boundary between the CAG and Lee properties gave the Lees 43 feet of road frontage and

---

[2] In October 2019, the trial court granted the Lees' attorney leave to withdraw, but the trial court did not grant the attorney's request to continue the trial. In denying that request, the court reasoned as follows:

> The Lees have had four sets of attorneys in this case, each set moving to withdraw after the relationship deteriorated to a point that it could no longer continue. The case, which was filed on June 17, 2016, has been reset at least three times, most recently on February 11, 2019. The day of trial, the parties announced a tentative settlement, only to be repudiated by the Lees. This case needs to be tried and the dispute resolved.

Thereafter, the Lees proceeded to trial pro se.

corresponded with the chain link fence that had been there previously. The former owner of the CAG property, Jackie Cox, and the former tenant, John Stallworth, testified that the chain link fence had been there since 1987 and was treated as the boundary.

For their part, the Lees relied on Mr. Lee's testimony and a photocopy of a microfiche labeled "Property Map and Record System—Metropolitan Government of Nashville and Davidson County." To support their claim that the Lee property contained 45 feet of road frontage, Mr. Lee referenced the microfiche document, stating that he obtained it from public records in 1999, just prior to Mrs. Lee purchasing the Lee property. It reflected a 1956 entry describing 1059 Second Avenue South (the Lee property) as being 45 feet by 135 feet. Thus, Mr. Lee claimed his property contained 45 feet of road frontage.

The court entered a final order on November 27, 2019, and ruled as follows:

> The Lees did not present evidence sufficient to cause the Court to question the accuracy of Mr. Matthews' survey. Accordingly, the Court finds the property line between the CAG and Lee Properties to be consistent with the Matthews survey, which is based on the property descriptions in the parties' respective deeds. CAG is entitled to the injunctive relief it seeks in this regard, i.e., that the Lees be permanently enjoined from coming onto its property.

As for CAG's alternative claim based on adverse possession, the court determined CAG proved by clear and convincing evidence that CAG and its predecessors in interest adversely possessed the property up to the chain link fence for the requisite period.

Having ruled in CAG's favor on the boundary line and ownership of the disputed property, the court also found that the Lees were liable for trespass and conversion and awarded CAG damages in the amount of $21,043.13.

This appeal followed.

### STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App.

2006). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

**ANALYSIS**

The brief filed by the Lees, who are pro se on appeal, profoundly fails to comply with the requirements of Rule 27 of the Tennessee Rules of Appellate Procedure. The brief includes sections labeled as the statement of the issues, statement of the case, and statement of facts, but they primarily consist of overlapping, stream-of-consciousness arguments that fail to reference or cite the appellate record. Moreover, the brief is so deficient that it is difficult to discern what issues the Lees intended to raise.[3] Nevertheless, it is apparent that they generally contend the trial court erred in determining that the boundary between the CAG and Lee properties was depicted on the Matthews survey, giving CAG 30 feet of road frontage and the Lees 43 feet as well as the ruling that CAG adversely possessed the disputed property up to the chain link fence for the requisite period.[4]

For its issues, CAG contends the trial court correctly determined the boundary line as giving CAG 30 feet of frontage and the Lees 43 feet of frontage and correctly found the Lees liable for damages for trespass, construction delays, and loss of use of the property. CAG also contends the Lees have filed a frivolous appeal, rendering them liable for damages to CAG in the form of attorney's fees and costs on appeal.

I. THE BOUNDARY LINE

"When determining a boundary line that is in dispute, the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999). This Court explained in *Hong v. Foust*:

---

[3] The Lees are "entitled to fair and equal treatment by the courts" as pro se litigants. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). However, they "are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).

[4] The Lees also contend the trial court erred in holding them in contempt for willfully disobeying the court's April 8, 2019 order, the injunction. For example, they state in their brief, "The Lee's are not guilty of contempt and request civil penalty be remove[] and charges dismissed. The Lee's warranty deed through surveyor and Tim Callahan guarantee the lot[s] is 45x135 and no encroachment or adverse possession." However, because their arguments pertain to the merits of the court's decision as to the boundary line and adverse possession rulings instead of contempt, and because the brief fails to cite to the record evidencing the allegedly erroneous action, their challenge of the alleged error, the resultant prejudice, or each determinative fact, they have failed to comply with Tenn. Ct. App. R. 6(a). Resultantly, the issue is waived. *See* Tenn. Ct. App. R. 6(b).

The construction of [a] deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact. If, therefore, the evidence concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.

No. E2011-00138-COA-R3-CV, 2012 WL 388448, at *5 (Tenn. Ct. App. Feb. 8, 2012) (quoting 12 Am. Jur.2d *Boundaries* § 121 (1997)).

The deed to the CAG property states that it contains 30 feet of road frontage on Second Avenue South (formerly known as Market Street):

Being the southerly 14 feet of Lot No. 21, and the northerly 16 feet of Lot No. 22 in Isaac Paul's Elysian Grove Plan of Lots in Nashville, Tennessee, fronting together 30 feet on the westerly side of Market Street and running back westerly between parallel lines 136 feet, more or less, to an alley.

However, the deed to the Lees' property is less clear; in one paragraph, it states the Lee property contains 42 feet of road frontage, and in another, it states the property contains 43 feet:

Being the southerly *7 feet* of lot No. 20 and the northerly *35 feet* of lot No. 21 on the Plan of Paul's Elysian Grove Plan of Lots in South Nashville, as of record in Plan Book 1, Page 134, Chancery Court at Nashville.

Said plans of Lots Nos. 20 and 21 front together *43 feet* on the westerly side of Second Avenue South, formerly Market Street, and run back between parallel lines 135 feet, more or less, to an alley.

(Emphasis added).

Because this ambiguity results from the contradictory language, alone, and not from the "ambiguous state of the extrinsic circumstances" to which the words refer, the ambiguity is patent rather than latent. *Ward v. Berry & Assocs., Inc.*, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981). Consequently, the court cannot rely on parol evidence to resolve the ambiguity and must focus on rules of construction. *Id*.

The trial court determined that the discrepancy in road frontage resulted from a scrivener's error, and the correct measurement was 43 feet of road frontage as depicted on

the Matthews survey. The trial court also noted that the Lees' deed did not indicate that the Lee property contained 45 feet of road frontage, as the Lees claimed.

The court's determination is supported by the testimony of Mr. Matthews. He examined the deeds in the Lees' chain of title and discovered that previous deeds described the boundary as the southerly 7 feet of Lot 20 and the northerly *36 feet* of Lot 21, which equals 43 feet of road frontage. Thus, in Mr. Matthews' opinion, the second paragraph in the Lees' deed describing the property as having 43 feet of road frontage was likely correct. Moreover, Mr. Matthews testified that his survey, which gives the Lee property 43 feet of road frontage, comports with artificial monuments and possession lines in the area, including the chain link fence that, at one time, ran between the Lee and CAG properties. He also testified that, if the Lee property contained 45 feet of road frontage, as Mr. Lee claimed, it would move all property lines on the block two feet to the south and would place some of the houses on the block out of code due to set-back requirements.

Because Mr. Matthews' survey comports with the depictions in the relevant deeds, the artificial monuments and possession lines in the area, and the boundary lines of adjacent properties, we agree with the trial court that the evidence preponderates in favor of a finding that the boundary was correctly depicted on Mr. Matthews' survey. Therefore, we affirm the trial court's decision.

## II. FRIVOLOUS APPEAL

CAG contends it is entitled to its costs and attorney's fees incurred in defending this appeal pursuant to Tenn. Code Ann. § 27-1-122.

"Parties should not be forced to bear the cost and vexation of baseless appeals." *Young v. Barrow*, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003). As such, "the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay." *Id.* The decision to award these damages is a discretionary decision. *Id.* at 66–67 (citing *Banks v. St. Francis Hosp.,* 697 S.W.2d 340, 343 (Tenn. 1985)).

Tennessee Code Annotated § 27-1-122 provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy,* 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding." *Young*, 130 S.W.3d at 67. We have determined that this appeal is devoid of merit and had no reasonable chance of succeeding. The factors that lead us to this conclusion include the fact that the fence was on the property line when Mrs. Lee bought the house where it remained until CAG purchased the property next door; the Lees' deed did not describe the frontage as 45 feet, only 42 or 43; and the former owner and former tenant of the CAG property testified that the fence was the property line. Further, the Lees retained four different attorneys to represent them in the trial court proceedings. Each of them withdrew and the last one withdrew after the Lees admitted they intentionally violated the injunction. Moreover, the Lees pursued this appeal relying on a brief that profoundly failed to comply with the requirements of Rule 27 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals of Tennessee.

Therefore, exercising our discretion, CAG is entitled to recover the reasonable and necessary costs it incurred on appeal, the amount of which the trial court shall determine upon remand.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Martha Arnita Lee and Bennie Lee.

_____
FRANK G. CLEMENT JR., P.J., M.S.